UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

J.E. McAMIS, INC., a California corporation;
and McAMIS INDUSTRIES OF OREGON,
an Oregon corporation,

        Plaintiffs,

    v.

MILLER CONTRACTING, INC., a Washington
corporation; and THE HARTFORD FIRE
INSURANCE COMPANY, a Connecticut
corporation,

        Defendants,

MILLER CONTRACTING, INC., a Washington
corporation; and THE HARTFORD FIRE
INSURANCE COMPANY, a Connecticut
corporation,

        Third-Party Plaintiffs,

Civil No. 04-1317-HA

OPINION AND ORDER

1 -- OPINION AND ORDER

       v.
WILDER CONSTRUCTION COMPANY, a
Washington corporation; James T. Campbell, doing
business as CAMPBELL TOWING AND
MARINE CONSTRUCTION, an Oregon sole
proprietorship; and the NORTON BAY O.N.
619820, her hull, engines, tackle, machinery,
equipment, electronics, bunkers, and furnishings,
*in rem*,

       Third-Party Defendants.

_____

HAGGERTY, Chief Judge:

  This maritime lawsuit arose after defendant Miller Contracting, Inc., (Miller) entered into a subcontract with plaintiff McAmis, under which McAmis agreed to provide the services of crane barge CRYSTAL GAYLE, and dump barges SAND ISLAND and SWAN ISLAND to Miller. Miller is a general contractor and had several projects involving marine dredging and construction on the Hylebos Waterway in Tacoma, Washington. These projects were identified in the subcontract and in amendments to it.

  Plaintiff McAmis has sued Miller for damages arising from usage, labor, expenses and repairs. The damage allegedly stemmed from groundings, bucket contacts, and other incidents over the course of three projects.

  Miller, in addition to asserting that plaintiffs caused the damages, failed to mitigate, and misrepresented facts, also brought a third party Complaint against third party defendants Wilder Construction and Campbell Towing. Wilder Construction provided a crane that was used in the operations. Campbell Towing (Campbell) operates towing vessels, including the NORTON

2 -- OPINION AND ORDER

BAY, in Astoria, Oregon. Campbell moves for summary judgment against Miller. For the following reasons, this motion is granted.

**BACKGROUND REGARDING THIRD PARTY ACTION**

On July 1, 2003, Campbell entered into a Time Charter Agreement with Miller, agreeing to tow the barges owned by McAmis using the tug vessel NORTON BAY. This Charter Agreement was "portal to portal," from Astoria to the project site and back to Astoria. The barges towed and assisted by the NORTON BAY were allegedly damaged during the Time Charter period.

In both the initial and an amended Time Charter, Miller explicitly agreed to procure hull and machinery insurance on barges "towed or assisted" by the NORTON BAY. Miller further agreed to name Campbell as an assured or additional insured on Miller's hull policy and to waive subrogation against Campbell. Miller agreed in the Time Charter that the parties (i.e., Miller and Campbell) intended to cover with insurance -- and to "look solely to such insurance" to cover -- the risk of loss and damage to the NORTON BAY and its towed barges. As a corollary to the latter provision, Miller agreed to indemnify and hold Campbell harmless from all claims arising out of loss or damage to the towed barges:

¶10. General.

(a) Agreement. This Charter may be amended only by a written agreement signed by each party.

\* \* \*

(f) Entire Agreement. This Charter contains the entire understanding of the parties regarding the subject matter of this Charter and supersedes all prior and contemporaneous negotiations and

agreements, whether written or oral, between the parties with respect to the subject matter of this Charter.

¶11. Insurance.

* * *

(b) [Miller] will procure and maintain . . . at its sole cost and expense . . . (i) Hull and Machinery insurance [identification of required forms] for the full actual value of all vessels and other objects towed or assisted by [the NORTON BAY] [.]

(c) Each of the aforesaid policies will name [Campbell Towing and Miller] as assured or additional assureds and will expressly waive subrogation or action under loan receipt against [Campbell] or the Vessel and against [Miller].

(d) The parties intend to cover, with insurance, the risks of loss of and damage to the Vessel [NORTON BAY] and other vessels . . . and will look solely to such insurance for the recovery of any loss, damage, liability and expense.

Both written Time Charter forms signed by Miller and Campbell were fully integrated instruments. Their insuring provisions were identical. Changes to the instrument were allowed only by a signed writing.

## **STANDARDS**

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see Bahn v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). The moving party carries the initial burden of proof and meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once

the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000), citations omitted. All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *MetroPCS, Inc. v. City and County of San Francisco*, 400 F.3d 715, 720 (9th Cir. 2005), citation omitted. Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981), citing Fed. R. Civ. P. 56(c).

Deference to the non-moving party does have limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 252 (1986).

Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

## **ANALYSIS**

As noted above, the underlying suit here is by the owner of the barges (McAmis), who has sued Miller in part for the alleged damages to the barges. Miller's Third Party Complaint seeks indemnification, contribution, and subrogation from Wilder and Campbell for these damages.

Campbell is entitled to summary judgment in this third party action. The contractual insurance agreement between Miller and Campbell established explicitly that Miller would procure hull insurance on the barges, name Campbell as an additional insured, waive subrogation against Campbell, and instructed that the parties would look solely to such insurance for the recovery of any loss, damage, liability and expense.

Miller opposed Campbell's summary judgment motion by submitting a Declaration from Thomas Johnson, described as a "representative" of Miller, who asserts that Miller and Campbell did not have a "meeting of the minds" on the Time Charter; and/or, that the Time Charter identified as Exhibit 2 to Campbell's motion for summary judgment is not properly authenticated.

Miller's authentication dispute is based upon the fact that there were two versions of the integrated Time Charter. There is no dispute that Miller (by Miller Vice President Scott Jacob) did sign both versions (including the final form) of the Time Charter, and that in both versions, Miller unconditionally agreed to provide hull & machinery insurance for the towed barges. In both forms, the insurance provisions were identical. However, as asserted by declarant Thomas Johnson, the signature pages to the two versions were mistakenly switched. Johnson concedes that Miller signed the two Time Charter versions.

There is no evidence of any dispute over the "mutual acceptance of the terms and conditions" of the Time Charter, other than a minor dispute referring to "fuel and lube" issues. Given the identical Insurance section of the two versions of the Time Charter, as well as Miller's admitted execution of the two integrated agreements, Miller's allegation about authentication of the Time Charter borders upon the frivolous.

6 -- OPINION AND ORDER

Miller's "no meeting of the minds" argument is also rejected. This assertion arises from Thomas Johnson's unilateral claim that his "reasonable expectation" was that the Subcontract between McAmis and Miller called for all barge insurance to fall on McAmis. Johnson further alleges he (and/or Miller) did not understand or intend Miller to have an obligation to provide hull and machinery insurance on the barges towed by Campbell. However, Johnson's unilateral, alleged confusion is not sufficient to overturn the unequivocal language of the signed, integrated contract.

In light of the fact that Miller's only objection to Campbell's Motion for Summary Judgment challenges the authenticity of the Time Charter and suggests that Miller had a different understanding of terms because of negotiations with McAmis, the summary judgment motion must be granted. There is no substantive dispute regarding the Time Charter's authenticity. Moreover, any allegations Miller may have regarding negotiations between Miller and McAmis might best be raised in the litigation between McAmis and Miller. Such allegations fail to overcome the explicit provisions of the contractual insurance agreement between Miller and Campbell that require Miller to procure hull insurance on the barges, name Campbell as an additional insured, waive subrogation against Campbell, and look solely to such insurance for the recovery of any loss, damage, liability and expense.

This court conducted a telephonic hearing in this matter on December 4, 2006. At that hearing, Miller's Motion for Leave to File a Supplemental Response and Declaration [66] was denied. This Opinion and Order reiterates that there were no grounds presented compelling supplemental briefing. Even if this court were to disregard the declarations accompanying Campbell's Reply, and accept as true that Miller could present a sur-reply declaration from Vice

7 -- OPINION AND ORDER

President Scott Jacob that asserted that Jacob had negotiated with John McAmis, had no discussions directly with Jim Campbell, and that McAmis agreed in his negotiations to insure the two dump barges, the explicit terms of the Time Charter would still entitle Campbell to summary judgment.

## CONCLUSION

For the reasons stated, third party defendant Campbell's Motion for Summary Judgment [52] is granted.  As established during the telephonic hearing on December 4, 2006, the parties will conduct expert depositions during the week of April 16, 2007 (and possibly at other times). Discovery closes on April 30, 2007.  Any objections to experts must be filed by May 1, 2007. Trial documents due June 8, 2007.  Objections to trial documents due June 22, 2007.  The Pretrial Conference in this matter will be held on July 2, 2007, and a court trial shall commence on July 31, 2007.

IT IS SO ORDERED.

DATED this  8   day of December, 2006.

   /s/ ANCER L. HAGGERTY
Ancer L. Haggerty
United States District Judge